# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. HUGO ADALBERTO CASTILLO-MARTINEZ, Defendant. | No. 10-CR-2035-LRR<br><br>**ORDER** |

_____

## *I. INTRODUCTION*

The matter before the court is Defendant Hugo Adalberto Castillo-Martinez's Objections (docket no. 25) to United States Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 24). Judge Scoles recommends the undersigned grant in part, and deny in part, Defendant's "Motion to Suppress Physical Evidence and Statements" ("Motion") (docket no. 14), as amended (docket no. 18).

## *II. RELEVANT PROCEDURAL HISTORY*

On August 17, 2010, a grand jury returned a one-count Indictment (docket no. 2) against Defendant. Count 1 charges Defendant with Unlawful Use and Possession of Identity Documents, in violation of 18 U.S.C. § 1546(a). On September 15, 2010, Defendant filed the Motion. On September 24, 2010, Defendant filed an Amendment to the Motion. On September 29, 2010, the government filed a Resistance (docket no. 21).

On September 30, 2010, Judge Scoles held a hearing ("Hearing") on the Motion. Attorney Mark C. Meyer represented Defendant, who was personally present. Assistant United States Attorney Daniel C. Tvedt represented the government. On October 8, 2010, Judge Scoles filed the Report and Recommendation. On October 22, 2010, Defendant filed his Objections.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *see also* Fed. R. Crim. P. 59(b)(3) (stating "[t]he district judge must consider de novo any objection to the magistrate judge's recommendation"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed R. Crim. P. 59(b)(3) (stating a district judge "may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions"). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the undersigned reviews the Report and Recommendation de novo.

## IV. ANALYSIS

Defendant lodges objections to both Judge Scoles's Findings of Fact and Conclusions of Law. First, the court addresses the factual Objections. Second, the court addresses Defendant's Objections to the Conclusions of Law.

### A. Findings of Fact

Defendant raises two objections to Judge Scoles's findings of fact. Specifically, Defendant argues that Judge Scoles "omits two important facts established at the suppression hearing." Objections at 3. Defendant maintains, "The first fact is that when the Defendant admitted that he was from Guatemala and that he did not have his visa and passport with him, he admitted being in violation of immigration law." *Id*. Second, Defendant asserts that Judge Scoles omitted the fact that Special Agent Andrew Lund

2

testified that Defendant was no longer free to leave after Defendant admitted that he was in violation of immigration law.

Contrary to Defendant's assertions, Judge Scoles discussed both of these facts in the Report and Recommendation. Although not raised by Defendant, Judge Scoles decided to analyze whether Immigration and Customs Enforcement ("ICE") Agents had seized Defendant after his initial contact with the Agents, but before Defendant's formal arrest. In concluding that Defendant had not been seized during that time, Judge Scoles explained, "Special Agent Lund testified that after Defendant revealed that he was from Guatemala, but did not have documentation on his person, 'he was not free to go.' Defendant was not advised that he was not free to leave, however, until he was formally arrested." Report and Recommendation at 10. Judge Scoles then found that, because Defendant had not been told that he was not free to leave, and because "[t]here was no showing of force or intimidation, no threats or physical touching, and Defendant's liberty was not restrained in any way," Defendant was not seized when he was asked to sit in the hallway until an officer would be available to question him further. *Id*.

Judge Scoles then conducted an alternative analysis, in case the court disagreed with his conclusion that Defendant had not been seized during the relevant time period. Judge Scoles considered whether, in the event Defendant had been seized, the Agents had reasonable suspicion for the seizure. Judge Scoles explained,

> Defendant told [ICE Special Agent Michael] Fischels that he was in the United States from Guatemala on a visa, but did not have any identification documents on him. At that point, [Agent] Fischels had a reasonable, articulable suspicion that Defendant was in violation of immigration laws, requiring that he carry with him evidence of his alien registration status.

*Id*. at 11 (citing 8 U.S.C. § 1304(e)). Thus, Judge Scoles concluded that even if Defendant was seized before his formal arrest, reasonable suspicion supported such a seizure.

3

In the Report and Recommendation, Judge Scoles addressed both of the facts Defendant claims he omitted. The undersigned has considered the entire record and finds Judge Scoles's factual findings to be accurate. Accordingly, the court shall overrule Defendant's objections to Judge Scoles's factual findings.

### B. Conclusions of Law

Defendant makes two objections to Judge Scoles's conclusions of law. First, Defendant objects to Judge Scoles's conclusion that Defendant was not seized for Fourth Amendment purposes when Agent Fischels initially made contact with Defendant in the hallway of an apartment building, motioned for Defendant to come over to speak to him, asked Defendant questions relating to a criminal investigation and then asked Defendant about his identification. Second, Defendant objects to Judge Scoles's conclusion that Defendant was not in-custody for *Miranda*[1] purposes when Defendant admitted that he did not have his identifying documents on his person in violation of immigration law.

1. *Seizure*

There are three categories of law enforcement encounters. *United States v. Johnson*, 326 F.3d 1018, 1021 (8th Cir. 2003). First, there are consensual encounters. *Id*. Consensual encounters are described as "communications between officers and citizens that are consensual and involve no coercion or restraint of liberty." *Id*. The Fourth Amendment does not apply to consensual encounters. *Id*. Second, there are *Terry*[2] stops. *Id*. *Terry* stops are "brief, minimally intrusive seizures which are considered significant enough to invoke Fourth Amendment safeguards and thus must be supported by a reasonable suspicion of criminal activity." *Id*. Third, there are custodial arrests, which "must be based on probable cause." *Id*.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

The government argues that the initial contact between Defendant and the ICE agents was consensual. Defendant maintains that the initial encounter was not consensual and constituted a seizure for Fourth Amendment purposes. "In determining whether a person has been seized for Fourth Amendment purposes, the relevant question is whether, in view of the totality of circumstances surrounding the incident, a reasonable person would have believed he was free to leave." *Id.* (citing *INS v. Delgado*, 466 U.S. 210, 215 (1984)).

"'Obviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.'" *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). "'[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.'" *Id.* (quoting *Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion)). Further, "even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual's identification, and request consent to search his or her luggage—as long as the police do not convey a message that compliance with the requests is required." *Id.* at 534-35 (internal citations omitted). No factor or set of factors exists which necessarily makes an encounter a seizure. *Id.* However, the Supreme Court has identified factors which "inform the determination of whether a seizure took place." *Johnson*, 326 F.3d at 1022. These factors include:

> officers positioning themselves in a way that limits the person's freedom of movement, presence of several officers, the display of weapons by officers, physical touching, the use

> of language or intonation indicating compliance is necessary, the officer's retention of the person's property, or an officer's indication that the person is the focus of a particular investigation[.]

*Id.* (internal citation omitted).

During the course of Agent Fischels's initial contact with Defendant, Agent Fischels was located on the ground floor of the apartment complex and Defendant remained in the stairwell. Defendant does not allege that Agent Fischels positioned himself in a way that limited Defendant's freedom of movement. Agent Fischels was the only law enforcement officer present in the hallway with Defendant during the initial encounter. Although Agent Fischels had a visible sidearm, Agent Fischels did not remove his sidearm or display it in any other way. Agent Fischels did not touch Defendant during their initial conversation, and Agent Fischels did not use any language or change his tone of voice in such a way as to indicate to Defendant that his compliance was necessary. During the relevant time period, Agent Fischels had not yet obtained Defendant's identification. Finally, Agent Fischels did not tell Defendant that he was the subject of an investigation. Considering all of the factors set forth by the Supreme Court, none of the factors support Defendant's claim that he had been seized for purposes of the Fourth Amendment during Agent Fischels's initial contact and discussion with Defendant.

After reviewing the entire record, and applying the applicable law to the facts in the instant case, the court agrees with Judge Scoles's thorough analysis and ultimate conclusion that Defendant was not seized during his initial contact with Agent Fischels. Accordingly, this objection is overruled.

### 2. *Custody determination*

Defendant objects to Judge Scoles's conclusion that Defendant was not in-custody for *Miranda* purposes when "Defendant initially admitted violating the law by not having the proper papers" on his person. Objections at 7. Defendant contends that, after Defendant admitted that he did not have identifying papers on his person, the agents should have given Defendant *Miranda* warnings before talking to Defendant about the location of his visa. Because Defendant was not given *Miranda* warnings, Defendant contends that all of the information Agent Lund obtained during the conversation with Defendant should be suppressed under the exclusionary rule.

Under the law, "'police officers are not required to administer *Miranda* warnings to everyone whom they question.'" *United States v. Flores-Sandoval*, 474 F.3d 1142, 1146 (8th Cir. 2007) (quoting *United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004) (en banc)). "The protections of *Miranda* apply to custodial interrogations." *Id.* "A custodial interrogation is defined as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way.'" *Id.* (quoting *Maine v. Thibodeau*, 475 U.S. 1144, 1146 (1986)). "The ultimate inquiry to determine custody for *Miranda* purposes is whether there was a formal arrest, or restraint on the freedom of movement of the degree associated with a formal arrest." *United States v. Black Bear*, 422 F.3d 658, 661 (8th Cir. 2005).

Under the circumstances presented here, Defendant was not in-custody for *Miranda* purposes when he admitted to Agent Fischels that he had a visa, but that it was not on his person. Defendant was not formally arrested until the agents determined that Defendant had overstayed his visa. At no time prior to Defendant's formal arrest did the agents do anything to suggest to Defendant that there was a restraint on his freedom of movement. Defendant was not subjected to in-custody interrogation during this time period because, until Defendant was formally arrested, Defendant was not in-custody. *See United States v. Howard*, 532 F.3d 755, 761 (8th Cir. 2008) ("*Miranda* warnings are not required for

7

'[g]eneral on-the-scene questioning as to facts surrounding a crime,' which does not present 'the compelling atmosphere inherent in the process of in-custody interrogation.'" (quoting *Miranda*, 384 U.S. at 477-78)).

After completing a de novo review, the undersigned agrees with Judge Scoles's analysis and conclusion on this issue. Accordingly, Defendant's objection to Judge Scoles's finding that Defendant was not in-custody and that *Miranda* warnings were not required prior to the Agents' questioning of Defendant at the apartment complex is overruled.

## V. CONCLUSION

In light of the foregoing, the court **ORDERS:**

(1) The Objections (docket no. 25) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 24) is **ADOPTED**; and

(3) The Motion (docket no. 14) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED**.

**DATED** this 15th day of November, 2010.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA